# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Haemonetics Corp.,

§

            Plaintiff,

§

§     Case No. 1:09-cv-12107-NMG

   v.

§

§

Fenwal, Inc.

§

§

         Defendant.

## PLAINTIFF HAEMONETICS CORP.S' OPPOSITION TO
## DEFENDANT FENWAL, INC.'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................................3

III.    ARGUMENT ......................................................................................................4

        A.      The Summary Judgment Standard ...........................................................4

        B.      The Language of Claim 16 ....................................................................5

                1.      Claim 16 Is Not Limited to a Single *Plurality of Tubes.*.................................6

        C.      Summary Judgment of Non-Infringement Is Inappropriate. ....................................7

                1.      Fenwal Cannot Meet its Burden at Summary Judgment. .............................9

                2.      Only the Height Limitation is at Issue.........................................................12

                3.      Rochat Merely Selected a Height Limitation................................................13

                4.      Rochat Did Not Disclaim Equivalents of the Height Limitation. .................14

        D.      Summary Judgment of Indefiniteness Is Inappropriate. ........................................16

                1.      Fenwal Cannot Carry its Burden to Show Indefiniteness............................17

IV.     CONCLUSION ...................................................................................................20

00345287.DOC/

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Dey, L.P.*,
    287 F.3d 1097 (Fed. Cir. 2002)...............................................................15, 17

*ACLARA Biosciences, Inc. v. Caliper Technologies Corp.*,
    125 F. Supp.2d 391 (N.D. Cal. 2000)..................................................13

*Amazon.com, Inc. v. BarnesandNoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)..........................................................8

*Amesbury Group, Inc. v. Galdwell Mfg.Co.*,
    No. 05-cv-10020-DPW, 2006 U.S. Dist. LEXIS 80286 (D.Mass. Nov. 2, 2006)...........13

*Amgen Inc. v. Hoescht Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)..........................................................19

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986).......................................................................9

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008)..........................................................20

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
    796 F.2d 443 (Fed. Cir. 1986)............................................................8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).......................................................................5

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005)..........................................................10

*D.M.I., Inc. v. Deere & Co.*,
    755 F.2d 1570 (Fed. Cir. 1985)..........................................................9

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)......................................................18, 19

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    469 F.3d 1005 (Fed. Cir. 2006)..........................................................10

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001)......................................................19, 20

*Free Motion Fitness Inc. v. Cybex Intern., Inc.*,
    324 F.3d 1342 (Fed. Cir. 2005)..........................................................21

*General Elec. Co. v. Nintendo Co., Ltd.,*
    179 F.3d 1350 (Fed. Cir. 1999) .......................................................................5

*Honeywell Int'l, Inc. v. Int'l Trade Commission,*
    341 F.3d 1332 (Fed. Cir. 2003) .............................................................. 19, 20

*In re Warmerdam,*
    33 F.3d 1354 (Fed. Cir. 1994) .....................................................................19

*Insituform Techs., Inc. v. Cat Contracting, Inc. ,*
    382 F.3d 1360 (Fed.Cir. 2004) ....................................................................14

*Insituform Techs., Inc. v. Cat Contracting, Inc.,*
    161 F.3d 688 (Fed. Cir. 1998) .....................................................................10

*JVW Enterprises, Inc. v. Interact Accessories, Inc.,*
    424 F.3d 1324 (Fed. Cir. 2005) ...................................................................12

*Marley Mouldings Ltd. v. Mikron Indus., Inc.,*
    417 F.3d 1356 (Fed. Cir. 2005) ...................................................................19

*O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.,*
    467 F.3d 1355 (Fed. Cir. 2006) .....................................................................8

*Omega Eng'g, Inc. v. Raytek Corp.,*
    334 F.3d 1314 (Fed. Cir. 2004) ...................................................................16

*Papyrus Tech. Corp. v. New York Stock Exchange, LLC,*
    257 F.R.D. 39 (S.D.N.Y. 2009) ...................................................................21

*SmithKline Beecham Corp. v. Apotex Corp.,*
    403 F.3d 1331 (Fed. Cir. 2005) ...................................................................19

*Warner Mfg. Co. v. Armstrong,*
    No. 05-cv-0612, 2007 U.S. Dist. LEXIS 86886 (D.Minn. Nov. 15, 2007) .....................14

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,*
    904 F.2d 677 (Fed. Cir. 1990) .....................................................................17

**Statutes**

35 U.S.C. § 112, ¶ 2 (2001). ...............................................................................17

35 U.S.C. § 282 (2001) ......................................................................................17

**Rules**

Fed. R. Civ. P. 56(c) .........................................................................................5

**TABLE OF DEFINITIONS**

**The '983 Patent**:  U.S. Patent No. 6,705,983; the patent infringed by Fenwal.

**The Elevated ALYX Cups**:  The ALYX cups used to collect plasma or 2RBC, elevated by 9.5 mm from the Original ALYX Cups.

**The Federal Circuit's Opinion**:  The decision of the United States Court of Appeals for the Federal Circuit in *Haemonetics Corp. v. Baxter Healthcare Corp. and Fenwal Inc.*, No. 2009-1557 (Fed. Cir. June 2, 2010).

**The Centrifugal Tubes**:  The conduits molded to the interior of the ALYX Cups beginning at the base of the cups, extending through hub, and ending with the nipples.  These tubes provide blood flow between the umbilicus and the vessel.

**The Original ALYX Cups**:  The ALYX cups used to collect red blood cells in the ALYX device.  These cups were held by this Court to infringe Claim 16 of the '983 Patent.

**The Protrusion**:  The extraneous, hollow, non-functional portions of the ALYX Cups' walls extending beyond their corresponding bases resulting in the elevation by 9.5 mm of the Elevated ALYX Cups.

# I.   PRELIMINARY STATEMENT

Haemonetics recognizes that it previously considered the ALYX umbilicus to be *a plurality of tubes* – satisfying that element of Claim 16.   Indeed, during the entirety of the prior proceedings, Fenwal's retort to Haemonetics' infringement charge relied heavily on the premise that because the *centrifugal unit* of Claim 16 is comprised of both a *centrifugal component* (the vessel) and *a plurality of tubes*, identification of the umbilicus as *a plurality of tubes* either rendered Claim 16 indefinite or defeated infringement in toto.   Fenwal's assertion was predicated upon its belief that a skilled artisan would be unable to determine the overall height and radius dimensions of the *centrifugal unit* by measuring the dimensions of the *centrifugal component* in conjunction with *a plurality of tubes*.   And even if one could determine the dimensions, according to Fenwal, one would find the measurements of the *component* together with the umbilicus to be outside of the claimed height and radius ranges.

Thus, a dilemma presented itself requiring Haemonetics to argue, and this Court to agree, that the term *centrifugal unit* as used in the body of Claim 16 could not be defined differently from its consistent use throughout the remainder of the '983 Patent where the *unit* was defined as the vessel alone.   If *a plurality of tubes* is satisfied by the umbilicus and the *centrifugal unit* of Claim 16 is the combination of the vessel and the umbilicus, then the language of Claim 16 would lead to "an absurdity" rendering the otherwise presumptively valid claim invalid.   That "absurdity" led this Court to construe *centrifugal unit* as simply the vessel.

But at that time, neither Haemonetics, nor Fenwal, nor this Court ever considered whether the ALYX Cups also contained *a plurality of tubes* in addition to the umbilicus.   Indeed, that determination was never at issue in the prior proceedings because of the parties' singular focus on the umbilicus.   Consequently, the issue was never considered by the Federal Circuit either.[1]   Nevertheless, the Federal Circuit's clarification of the term *centrifugal unit* in Claim 16

---

[1] Haemonetics does not dispute that the Federal Circuit's Opinion makes reference to the "question mark shaped loop."   But contrary to Fenwal's assertions, that reference does not mean (footnote continued)

as including both a *centrifugal component* and *a plurality of tubes* once again revived the dilemma.   The Court's reasoning, however, was based on its finding that Claim 16 is directed to an alternate embodiment – one which is different from the embodiments described by Claims 1 and 20 of the '983 Patent.

In light of the Federal Circuit's Opinion, and guided by that Court's insight, Haemonetics reexamined the ALYX Cups.   In so doing, Haemonetics determined that the ALYX Cups in fact contain *a plurality of tubes* in addition to the umbilicus.   Specifically, the ALYX Cups contain a set of tubes which are molded into the vessel and allow blood to flow into and out of the vessel ("Centrifugal Tubes") (Ex. A to Declaration of G. Albert Russell, September 3, 2010 Infringement Contentions).   As such, these tubes are literally *a plurality of tubes* which fall squarely within the confines of this agreed upon definitions of the terms *plurality* and *tubes* (SGI ¶¶ 25, 26 (defining *plurality* as "[t]wo or more" and *tubes* as "[c]onduits that transport liquid materials (*e.g.*, blood and blood components) into and out of the vessel")).[2]

Further, in accordance with the Federal Circuit's Opinion, Claim 16 requires that the *centrifugal unit* (which is comprised of the *centrifugal component* together with *a plurality of tubes*) turns around an axis (*see* the '983 Patent, col. 10: ln. 64, Claim 16).   Because the Centrifugal Tubes are molded within the c*entrifugal component*, the *component* and the *tubes* together (*i.e.*, the *unit*) rotate around the same axis at the same time – exactly as the claim requires (*id.*).

---

that the Federal Circuit opined that only the umbilicus is *a plurality of tubes*.  Indeed, that issue was never before the Federal Circuit because the prior proceedings only focused on the umbilicus.  Thus, it should not be surprising that the umbilicus is, at least, referenced in the Federal Circuit's Opinion.   Nevertheless, that reference does not create judicial estoppel – precluding Haemonetics from ever asserting that other structures in the infringing ALYX device are also *a plurality of tubes*.

[2] In the prior proceedings, this Court accepted the Parties' agreement that a *plurality* is "[t]wo or more" and *tubes* are "[c]onduits that transport liquid materials (*e.g.*, blood and blood components) into and out of the vessel."  That definition was adopted by the Court, relied upon in the prior proceedings, and remains in place today.

Moreover, the Centrifugal Tubes also eliminate the aforementioned dilemma because their dimensions are coterminous with those of the *centrifugal component*.   Thus, when determining the claimed height and radius dimensions of the unit, one need only measure the height and radius of the *component* itself.  Accordingly, the Centrifugal Tubes are a *plurality of tubes* in every manner and the ALYX Cups continue to infringe Claim 16 even under the Federal Circuit's modified Claim Construction Order.

In addition, contrary to Fenwal's assertions, Haemonetics never argued that *a plurality of tubes* restricts infringing devices to having one, and only one, plurality of tubes.  In fact, the '983 Patent's consistent usage of "*a*" *plurality of* tubes indicates that the Patent contemplates more than one *plurality of tubes.*  Under these circumstances, Fenwal may not use judicial estoppel to insulate an infringing device from a straightforward application of the Federal Circuit's claim construction.

Indeed, judicial estoppel is simply not applicable.  After the issuance of the Federal Circuit's mandate, this Court allowed Haemonetics to submit new infringement contentions.  On September 3, 2010, after a diligent reexamination of the ALYX Cups, Haemonetics served its Contentions.  The Contentions identified an alternate set of tubing in the ALYX Cups which are also *a plurality of tubes* as set forth in Claim 16.  And Haemonetics respectfully submits that nothing in the prior proceedings of this case precludes Haemonetics from identifying this alternate structure, so long as it is supported by this Court's prior construction (or accepted definitions) and the '983 Patent.  For these reasons, and as set forth below, there remain disputed issues of fact surrounding, at least, the Centrifugal Tubes rendering summary judgment inappropriate.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This Court is well-acquainted with the history of this dispute, and Haemonetics will not belabor that understanding here.   Rather, Haemonetics provides the following limited background for this Court's convenience while reviewing this Opposition.

As noted above, the Federal Circuit's Opinion found that the term *centrifugal unit* as used throughout Claim 16 includes both *a centrifugal component* (*i.e.* a vessel) and *a plurality of tubes* (SGI ¶11).  But prior to the Federal Circuit's pronouncement, Haemonetics and this Court understood the term *centrifugal unit* to refer to the vessel alone in all instances within Claim 16 and the remaining claims of the '983 Patent.  (SGI ¶12).  As such, heretofore, Haemonetics never had to determine every structure in the ALYX Cup which could plausibly be *a plurality of tubes* – it only had to identify one such structure.  In that regard the inquiry consuming much of this Court's time and resources centered on whether the tubing had to be included when measuring the height and radius of the *unit* itself.  That inquiry was definitively answered when the Federal Circuit issued its Opinion.  Citing to Column 3, lines 20-35 of the '983 Patent, the Federal Circuit found that Claim 16 was directed to "another embodiment" separate from the one depicted in the patent figures (SGI ¶14).  According to the Federal Circuit, the *centrifugal unit* of that embodiment contains both *a centrifugal component* and *a plurality of tubes* (SGI ¶14).  The *centrifugal unit* has radius of 25-50 mm and a height of 75%-125% of the radius (SGI ¶14).

But the Federal Circuit never explicitly opined on what structures could or could not be *a plurality of tubes*.  Rather, the Court correctly centered its focus on what had been previously argued in the prior proceedings – all of which exclusively involved the umbilicus.  Moreover, notwithstanding Fenwal's indefiniteness arguments, the Court declined to find Claim 16 indefinite (SGI ¶16).

In light of the Federal Circuit's Opinion and this Court's Order, Haemonetics served new infringement contentions applying the changed construction of *centrifugal unit* (SGI ¶22) to the ALYX Cups.  The contentions identify the Centrifugal Tubes noted above as *a plurality of tubes* infringing Claim 16 (SGI ¶22).

## III.   ARGUMENT

### A.   The Summary Judgment Standard

Fenwal must establish that no genuine issue of material fact exists as to (i) whether the

ALYX Cups infringe the '983 Patent, either literally or under the doctrine of equivalents, and (ii) whether Claim 16 is indefinite. Respectfully, Fenwal is able to establish neither. As this Court is aware, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of establishing that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a summary judgment motion, the Court must view all evidence in the light most favorable to the nonmoving party, must resolve any disputed issue of fact in favor of the nonmovant, and must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., General Elec. Co. v. Nintendo Co., Ltd.,* 179 F.3d 1350, 1353 (Fed. Cir. 1999).

**B.     The Language of Claim 16**

Haemonetics appreciates that this Court and the Federal Circuit have fully interpreted the language of Claim 16, resulting in constructions of both the terms *centrifugal unit* and *a plurality of tubes*. Haemonetics accepts these constructions, and does not seek further interpretation of either of these terms. Indeed, prior to the Federal Circuit's Opinion, the parties and this Court proceeded with the understanding that the ALYX umbilicus was *a plurality of tubes*. Haemonetics does not dispute that fact. The umbilicus, however, is not the only *plurality of tubes*. As noted above, the ALYX Cups also contain an internal *plurality of tubes* (Centrifugal Tubes). And nothing within the '983 Patent limits Claim 16 to devices with only a single *plurality of tubes*.

Haemonetics is also mindful of this Court's October 13, 2010 Order which states that Haemonetics is estopped from seeking a new construction of the term *a plurality of tubes* (SGI ¶23). Haemonetics does not disagree. As this Court previously found, *a plurality of tubes* means "two or more conduits that transport liquid (e.g. blood and blood components) into and out of the

vessel (SGI ¶¶ 25, 26)."  The parties agreed to this construction and that agreement remains intact today (SGI ¶26).  The dispute here focuses simply on application of *a plurality of tubes* to the facts, rather than the meaning of that term.  And as depicted below, the Centrifugal Tubes are a set of three tubes (or conduits) housed within the *centrifugal component* which form the pathway to transport blood into and out of the vessel.



Specifically, the Centrifugal Tubes begin at the base of the ALYX Cups, extend through the hub, and end with the nipples (*two or more conduits*) (SGI ¶31).  These passages specifically allow blood to travel (*transport liquid, e.g. blood and blood components*) between the channels extending radially in the base of the ALYX Cups to the end of the umbilicus displaying a shaped mount external to the vessel (*into and out of the vessel*) (SGI ¶31).  Thus, these tubes are verbatim in keeping with this Court's prior definition.

Moreover, Claim 16 requires the claimed *unit* to "turn around an axis to separate the components of a liquid" (*see* the '983 Patent, col. 10: ln. 64-5, Claim 16).  Applying the Federal Circuit's Opinion to the explicit claim language requires that both the *component* and *a plurality of tubes* must "turn around an axis."  Because the Centrifugal Tubes are set within the *component* that is exactly what happens.  When the *component* turns around an axis, so do the Centrifugal Tubes.  Thus, the express language of Claim 16 (and the functional reality of how the device works) supports a finding that the Centrifugal Tubes are *a plurality of tubes*.

### 1.    Claim 16 Is Not Limited to a Single Plurality of Tubes.

Claim 16 recites *a plurality of tubes* – not *the plurality of tubes*.  The use of the article '*a*' allows that a device may have more than one *plurality of tubes*.  The Federal Circuit has

repeatedly recognized that the recitation of 'a' or 'an' in a claim means 'at least one' not 'one and only one.'  *See, e.g., Free Motion Fitness Inc. v. Cybex Intern., Inc.*, 324 F.3d 1342, 1350-51 (holding that "'[a]' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'")  This convention is overcome only when the claim is specific as to the number of elements or when the patentee evinces a clear intent to limit the article.").    Thus, Claim 16 contemplates multiple structures that may be considered *a plurality of tubes* (SGI ¶28).

In fact, nothing in the '983 Patent limits Claim 16 to devices with only a single *plurality of tubes*.  And Fenwal's citation to the figures of the '983 Patent (which depict "tubes 4, 5 and 6" in the umbilicus) is misplaced as these figures are particularly directed to the embodiments described in Claims 1 and 20 of the '983 Patent.[3]  The Federal Circuit repeatedly stated that Claim 16 is drawn to an *alternative* embodiment of Mr. Rochat's invention (SGI ¶14).  The Patent's specification simply describes this embodiment as one where *a plurality of tubes* exists within the *centrifugal unit* (SGI ¶14).  It does not state that the claimed device has only one *plurality of tubes*.  Try as it might, Fenwal cannot escape this indisputable conclusion.  Tellingly, Fenwal fails to cite a single line in the '983 Patent or its file history which specifically states that only the umbilicus is a *plurality of tubes*.  That is because no such line exists with respect to Claim 16.

### C.    Summary Judgment of Non-Infringement Is Inappropriate.

Fenwal's Summary Judgment Motion is inappropriate because it fails to account for disputed issues of fact with respect to whether the Internal Tubes are also *a plurality of tubes* as set forth in Claim 16.  In addition, Fenwal does not address issues of fact related to how the skilled artisan would measure the height and radius dimensions of the claimed *unit.*  As noted above, the Federal Circuit clarified that Claim 16 is drawn to an embodiment wherein the

---

[3] Moreover, even these Figures do not depict the umbilicus as the only *plurality of tubes.*

*centrifugal unit* contains both the *centrifugal component* and *a plurality of tubes*.  The *unit* as a whole is of the dimensions recited.

Because the Centrifugal Tubes are set within the ALYX Cups, the dimensions of the *unit* are coextensive with those of the *component*.  In other words, the claimed height and radius dimensions of the ALYX Cups are still determined by measuring the height and radius of the device itself because the Centrifugal Tubes (*a plurality of tubes*) is within the device and thus does not alter the device's measurements.  As such, all ALYX Cups at issue infringe Claim 16: the Original ALYX Cups literally infringe Claim 16 in almost the same manner as this Court previously found; and the Elevated ALYX Cups infringe, either literally or by equivalency.

Haemonetics' modified infringement theory is squarely based upon the Federal Circuit's altered claim construction.  Indeed, such modifications in infringement theories are often appropriate when there are changes to an existing claim construction Order.  *See Amazon.com, Inc. v. BarnesandNoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("The court must properly interpret the claims, because an improper claim construction may distort the infringement and validity analyses.") citing *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 450 (Fed. Cir. 1986).  Further, the Local Patent Rules of many U.S. District Courts acknowledge the propriety of new infringement contentions after a change in claim construction.  *See, e.g., O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (upholding Patent Rules of the Northern District of California allowing changed infringement contentions after a claim construction ruling if the changes are believed in good faith to be required in light of the claim construction); *see also Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, 2009 WL 4906860 *4 (E.D.TX. Dec. 9, 2009) ("Plaintiff should not be concerned that its answer will somehow impede its ability to adjust its infringement contentions after the Court's claim construction ruling.  The Patent Rules explicitly provide that '[i]f a party claiming patent infringement believes in good faith that the Court's Claim Construction Ruling so requires . . . that party may serve Amended Infringement Contentions without leave of court . . .'").

While heretofore the parties' dispute has consistently centered on whether the umbilicus (a *plurality of tubes*) is included within the height and radius measurements of the unit, that dispute never foreclosed the possibility that the ALYX Cups contain, within the Cups themselves, another *plurality of tubes*. Haemonetics respectfully submits that the ALYX Cups infringe Claim 16 because their Centrifugal Tubes are also *a plurality of tubes* which squarely fall within the scope of Claim 16. The fact that the ALYX Cups have more than one *plurality of tubes*, one which may now evade infringement (umbilicus) and one which does not (Centrifugal Tubes), does not make them any less infringing. The Cups continue to infringe.

### 1.     Fenwal Cannot Meet its Burden at Summary Judgment.

For the reasons noted above, Fenwal cannot sustain its burden on summary judgment. Infringement, whether literal or under the doctrine of equivalents, is an issue of fact making summary judgment proper only if "no reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985) ("Because infringement is itself a fact issue . . . a motion for summary judgment of infringement or non-infringement should be approached with a care proportioned to the likelihood of its being inappropriate."); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998). As a result, courts routinely refuse to grant summary judgment on the issue of infringement. *See, e.g., Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1020 (Fed. Cir. 2006) (holding the "district court erred in granting summary judgment of non-infringement under the doctrine of equivalents" after finding "a question of fact exists as to whether the difference between the 'spherically-shaped' limitation and the alleged equivalent is substantial."); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1316-18 (Fed. Cir. 2005) (finding an issue of material fact as to whether the accused screw was equivalent of the external nut structure disclosed in the asserted patent's specification).

Every element of Claim 16 is practiced by the ALYX Cups. With respect to the vast

majority of Claim 16's elements, this Court's finding of infringement remains in place, as Fenwal has not challenged those findings. Thus, the parties' dispute is limited to: (i) whether the Centrifugal Tubes are *a plurality of tubes*; and, if so (ii) whether the ALYX Cups infringe the height and radius limitations recited in Claim 16.

*First*, the Centrifugal Tubes are *a plurality of tubes*. In fact, Haemonetics' prior expert, Dr. G. Albert Russell, supports this finding. The Court is familiar with Dr. Russell from earlier proceedings in this case. Dr. Russell is an expert with an understanding of what knowledge the skilled artisan would possess with respect to the '983 Patent. In his Declaration filed contemporaneously herewith, Dr. Russell explains that a skilled artisan could understand Claim 16 and its corresponding embodiment to be directed to a *centrifugal unit* comprised of a *vessel* with an integrated *plurality of tubes* such as the Centrifugal Tubes (SGI ¶30).

Indeed, Dr. Russell opines that Figure 22 of Fenwal's own '148 Patent depicts a similar centrifugal unit having a vessel integrated with a plurality of tubes, namely the tubes beginning at the base 150, extending through hub 120, and ending with the nipples 180 (SGI ¶29). Thus, according to Dr. Russell, a skilled artisan could have understood that the invention of Claim 16 could have multiple structures which could be considered *a plurality of tubes* (SGI ¶34). The umbilicus is one such structure (SGI ¶34). Another such plurality of tubes is the integrated set of tubes within the *centrifugal component*. Therefore, Dr. Russell opines that a skilled artisan would have understood that the recitation of *a plurality of tubes* in Claim 16 could have been fulfilled by either the set of integrated tubes (Centrifugal Tubes) or by the umbilicus (SGI ¶34).

Second, Dr. Russell also opines that, when considering the Centrifugal Tubes as *a plurality of tubes*, a skilled artisan would likely measure the height and radius of the *centrifugal unit* to be coextensive with the dimensions of the vessel (SGI ¶¶ 32, 33). According to Dr. Russell, because the Centrifugal Tubes are set within the ALYX Cups themselves, the Tubes' dimensions should have no effect on the overall dimensions of the Cups themselves (SGI ¶33). Thus, when considering the Centrifugal Tubes as *a plurality of tubes*, Dr. Russell believes that the dimensions of the umbilicus need not be considered in the infringement analysis of Claim 16.

Moreover, this Court will recall that two varieties of ALYX Cups are at issue in this litigation: the Original ALYX Cups and the Elevated ALYX Cups (SGI ¶22).  The Original ALYX Cups are those found by this Court to infringe Claim 16.  If the Centrifugal Tubes satisfy the requirement of *a plurality of tubes*, then the dimensions of the Cups are those previously found by this Court – specifically, a radius of 49 mm and height of 55 mm, *i.e.* a height 112% of the radius (SGI ¶33, Response ¶35-37 to Fenwal's Material Facts).  Thus, the Original ALYX Cups would continue to literally infringe Claim 16.

The Elevated ALYX Cups are merely the Original ALYX Cups set atop a non-functional Protrusion (SGI ¶¶ 18-21).  The Protrusion was unilaterally created and released by Fenwal in an attempt to skirt this Court's Permanent Injunction (SGI ¶17).  The Protrusion's sole purpose is to increase the height of the device beyond the literal limits of Claim 16 (SGI ¶¶ 18, 19).  It does not impact the cups' radii (SGI ¶17).

Federal Circuit law requires the Protrusion be excluded when measuring the Elevated ALYX Cups.  *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1333 (Fed. Cir. 2005) (finding the addition of a shell to a steering wheel to "amount to improvements that do not avoid infringement"); *Amstar Corp. v Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984) ("Modification by mere *addition* of elements of functions, whenever made, cannot negate infringement without disregard of the long-established, hornbook law" that infringement cannot be avoided by adding an extraneous element.") (emphasis in original) (internal citations omitted).

Properly excluding the height of the Protrusion, the Elevated ALYX Cups maintain the dimensions of the Original ALYX Cups – specifically a radius of 49 mm and height of 55 mm, *i.e.* a height 112% of the radius (SGI Responses ¶¶ 36, 37).  The Elevated ALYX Cups thus also literally infringe Claim 16.  Nevertheless, if this Court includes the Protrusion's dimensions in the height determination, the height of the Elevated ALYX Cup increases to 64.5 mm, barely beyond the literal bounds of Claim 16 (SGI Responses ¶¶ 36, 37).  But in that case, Haemonetics respectfully contends that the Elevated ALYX Cups infringe Claim 16 under the doctrine of equivalents.

For these reasons, genuine issues of material fact, including: (i) whether the Centrifugal Tubes are *a plurality of tubes*; (ii) the manner in which the skilled artisan would measure the dimensions of the infringing Cups; and (iii) whether the Elevated ALYX Cups are equivalent to the Original ALYX Cups, preclude a summary judgment finding of non-infringement.

Finally, with respect to equivalency, Fenwal's summary judgment motion does not address the specific factual issue of whether the Elevated ALYX Cups are equivalent to the Original ALYX Cups. Rather, Fenwal simply argues that equivalency is unavailable to Haemonetics because of alleged prosecution history estoppel. As such, while Haemonetics reserves its right to provide a complete factual analysis of the Elevated ALYX Cups in further proceedings, here, it addresses solely the availability of equivalency. And as set forth below, contrary to Fenwal's assertions, equivalents of the height dimensions recited in Claim 16 are available to Haemonetics.

### 2.   Only the Height Limitation is at Issue.

Claim 16 contains two separate dimensional limitations: (a) the claimed centrifugal unit must have a particular radius; and (b) the claimed centrifugal unit must have a particular height. That (b), the claimed height, has a mathematical relationship to (a), the claimed radius, is irrelevant. The two limitations are nevertheless distinct and separately analyzed. *ACLARA Biosciences, Inc. v. Caliper Technologies Corp.*, 125 F. Supp.2d 391, 393-403 (N.D. Cal. 2000). And equivalence of such limitations must be determined on a limitation by limitation basis. *See Amesbury Group, Inc. v. Galdwell Mfg.Co.*, Civil Action No. 05-10020-DPW, 2006 U.S. Dist. LEXIS 80286 *48 (D.Mass. Nov. 2, 2006).

Ignoring this fundamental precept, Fenwal alleges that because the radius limitation was arguably narrowed, the height limitation was therefore narrowed as well. But that is not true. The height limitation was not narrowed. While Haemonetics may be estopped from asserting equivalents with respect to the radius limitation, no such estoppel is warranted with respect to the height limitation. Prosecution history estoppel applies at the level of individual limitations

within claims and not at the level of entire claims or even elements. *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 382 F.3d 1360, 1367 (Fed.Cir. 2004); *see also Warner Mfg. Co. v. Armstrong*, Case No. 05-cv-0612, 2007 U.S. Dist. LEXIS 86886, *13 (D.Minn. Nov. 15, 2007) (holding that although patentee narrowed the "capturing-bracket" limitation to gain allowance, he did not narrow the "resiliently-lined-yoke" limitation and therefore, was free, as a legal matter, to argue that the accused device infringed claim 1 of the patent-at-issue because the it meets the "resiliently-lined-yoke" limitation under the doctrine of equivalents). Thus, only if the height limitation of Claim 16 was separately narrowed is Haemonetics potentially precluded from asserting equivalents of that limitation. That is not the case here.

### 3.   Rochat Merely Selected a Height Limitation.

The prosecution history of the '983 Patent clearly shows that the patentee, Jean-Denis Rochat, began prosecuting claims reciting three distinct height limitations. The first limitation (hereinafter "Height Limitation A") appeared in draft Claim 22, which corresponds to issued Claim 1, and recites, "a height between 75% and 125% *of* the radius" (SGI Response ¶3). The second limitation (hereinafter "Height Limitation B") appeared in draft Claim 36, which corresponds to issued Claim 16, and recites, "a height that is *approximately 75% greater* than the radius" (or 175% of the radius) (emphasis added) (SGI Response ¶3). Finally, the third limitation (hereinafter "Height Limitation C") appeared in draft Claim 40, which corresponds to issued Claim 20, and recites, "a height that is greater than approximately 75% of the radius" (SGI Response ¶3).

| Height Limitation | Draft Claim (Issued Claim) | Claimed Height |
|---|---|---|
| A | Claim 22 (Claim 1) | 75% – 125% of the radius |
| B | Claim 36 (Claim 16) | Approximately 175% of the radius |
| C | Claim 40 (Claim 20) | 75% – Infinity of the radius |

During prosecution, the patent examiner rejected draft Claims 36 and 40, which recited Height Limitations B and C, for lack of written description (SGI Response ¶4). In response, Mr.

Rochat amended *all* his draft Claims to recite Height Limitation A (75% – 125%), which the patent examiner agreed was supported by the written description (SGI Responses ¶¶ 4,5).   But Mr. Rochat's selection of Height Limitation A did not constitute a "narrowing" of the height limitation in draft Claim 36.   Height Limitation B is *more narrow* than Height Limitation A, as B fixes a specific height percentage whereas A recites a range of possible height percentages.

For instance, Height Limitation B requires that a cup with a 40mm radius must have a height of about 70mm (175% of 40mm), whereas Height Limitation A requires such a cup's radius to be between 30mm and 50mm (75% – 125% of 40mm).   Thus Height Limitations A and B yield mutually-exclusive values and Height Limitation A provides a broader, not narrower, range of possible heights (30-50mm as opposed to just 70mm in the preceding example).

Height Limitation B does not teach a range at all.   It teaches the height to be a specific number, *i.e.* the height must be about 175% of the radius.   In contrast, Height Limitation A expands the available heights the cup can be by reciting a range of between 75% – 125% of the radius.   Moreover, Height Limitation B requires that the claimed cup *always* have a height that is greater than its corresponding radius, while Height Limitation A allows the claimed cup to have heights both greater and smaller than its corresponding radius.   Accordingly, Rochat did not narrow the height limitation of Claim 16 and Haemonetics is able to assert equivalents thereto. *See., e.g., Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1107-8 (Fed. Cir. 2002) (holding that where the scope of equivalents asserted by patentee is not so broad as to encompass the prior art, the patentee is not precluded from relying on the doctrine of equivalents when the claimed range was 68.6%-90.7% and the infringing product was 94.5%).

### 4.        Rochat Did Not Disclaim Equivalents of the Height Limitation.

Fenwal alleges that by substituting Height Limitation A for Height Limitation C in draft Claim 40, Mr. Rochat allegedly narrowed the scope of the heights in what issued as Claim 20. This argument is a red herring.   First, issued Claim 20 is not the claim Fenwal infringed.   Thus, this purported narrowing is irrelevant to scope of equivalents related to Claim 16.

Second, Fenwal assumes estoppel applies because Mr. Rochat's selection of a Height Limitation was made in response to a rejection.  Not so.  "Whether amendment or argument made in response to a rejection under Section 112 produces an estoppel, as does an amendment made to obtain allowance in view of cited references, is dependant on the particular facts.  There is no all-encompassing rule that estoppel results from all claim changes, or all arguments, whatever their cause or purpose."  *Pall Corp.*, 66 F.3d at 1219-20.  The prosecution history evinces that Rochat never expressly disclaimed the equivalents of Height Limitation A, *i.e.*, equivalents to the 75% – 125% range.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-27 (Fed. Cir. 2004) (holding disclaimers of claim scope must be clear and express).

For example, assuming *arguendo* that Mr. Rochat narrowed the scope of Claim 20 and that such narrowing is relevant to the equivalency determination for Claim 16, nothing about this purported narrowing circumscribes the available range of equivalents to exclude the 131.6% height practiced by the Elevated ALYX Cups.  In fact, the maximum that can be ascertained from the examiner's rejection is that, in the examiner's view, the specification did not support claims directed to heights between 175% and infinity.  The examiner's acceptance of Height Limitation A evidences his belief that the specification at least supports heights between 75% and 125%.  But nothing in the rejection of heights above 175% and acceptance of those below 125% amounts to rejection of the heights in between those two ranges, namely 125% to 175%.  *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d at 1220 (upholding the District Court's application of the doctrine of equivalents based on its finding that the patentee "had not surrendered or abandoned patent protection outside of the 5:1 to 7:1 ratio range, and that [the patentee]'s voluntary restriction of the claims in the continuation-in-part application, and response to the examiner's rejection under Section 112, did not produce an estoppel with respect to the 4:1 product.").  Just as in *Pall*, Rochat voluntarily selected a range in response to the examiner's rejection under Section 112.  Rochat's selected range does not explicitly encompass all protectable ratios, much like *Pall*.  And, as in *Pall*, application of the doctrine of equivalents to the claimed range cannot be foreclosed based on Rochat's selection.  *Id.* at 1219-21.

Rochat's decision to simply prosecute Height Limitation A does not evidence a disclaimer of the equivalents thereof. At most, the file history indicates that if Rochat disclaimed anything with respect to Height Limitation A, his disclaimer must be that 175% is not equivalent to 125%. A proper analysis "[t]o determine the scope of the doctrine of equivalents" requires "consider[ation of] a 'hypothetical claim' that literally recites the range of equivalents asserted to infringe." *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1105 (Fed. Cir. 2002). "The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO . . ." *Id.* (citing *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990) Applying Federal Circuit law, one must consider whether the patent examiner would have allowed Claim 16 to recite a height of 131.6%. As stated above, the patent examiner's rejections only indicate his belief that heights 175% and greater are not supported by the specification. Therefore, the examiner would likely have allowed Claim 16 to recite a height of 131.6%, far from the 175% height rejected in the prosecution history. Thus, Rochat did not disclaim equivalents of the recited height range, and Fenwal's Elevated ALYX Cups infringe Claim 16 under the doctrine of equivalents. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d at 1220.

### D.     Summary Judgment of Indefiniteness Is Inappropriate.

Fenwal's summary judgment motion on Indefiniteness is entirely inappropriate. The Federal Circuit's Opinion explicitly requires expert testimony in order to determine Fenwal's indefiniteness assertion. But Fenwal fails to provide any such testimony. Thus, the '983 Patent is presumed to be valid, and Fenwal has put forth no evidence to the contrary. Moreover, unlike Fenwal, Haemonetics provides Dr. Russell's testimony. As noted above, Dr. Russell opines that a skilled artisan could understand the Centrifugal Tubes to be *a plurality of tubes* within the meaning of Claim 16. With that understanding, the dimensions of the *centrifugal unit* are coextensive with those of the *centrifugal component*. In light of Dr. Russell's testimony and the Federal Circuit's recognition that expert testimony on the issue is determinative of indefiniteness, Claim 16 cannot be held indefinite on summary judgment.

### 1.    Fenwal Cannot Carry its Burden to Show Indefiniteness.

A patent is presumed valid.   35 U.S.C. § 282 (2001).   The burden of establishing invalidity of any patent claim rests on the party asserting invalidity.   *Id.*   Because issued patents are entitled to a presumption of validity, indefiniteness must be shown by clear and convincing evidence.   *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).

Section 112, ¶ 2 requires that a patent "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."   35 U.S.C. § 112, ¶ 2 (2001).   "The legal standard for indefiniteness is whether a claim reasonably apprises those of skill in the art of its scope."   *In re Warmerdam*, 33 F.3d 1354, 1361 (Fed. Cir. 1994)..   The standard is met if "one skilled in the art would understand the bounds of the claim when read in light of specification."   *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001); *see also Marley Mouldings Ltd. v. Mikron Indus., Inc.*, 417 F.3d 1356, 1359 (Fed. Cir. 2005).

In addition, "[t]he test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement," *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340-41 (Fed. Cir. 2005), and "a claim is not indefinite merely because its scope is not ascertainable from the face of the claims." *Amgen Inc. v. Hoescht Marion Roussel, Inc.*, 314 F.3d 1313, 1342 (Fed. Cir. 2003).   A claim is indefinite under Section 112 only if it is "*insoluably ambiguous,* and no narrowing construction can properly be adopted." *Exxon Research*, 265 F.3d at 1375 (emphasis added); *see also Datamize*, 417 F.3d at 1347; *Honeywell Int'l, Inc. v. Int'l Trade* Commission, 341 F.3d 1332, 1338 (Fed. Cir. 2003)  (a claim is indefinite only when the "claim is not amenable to construction").

A claim is not indefinite because it is subject to more than one reasonable interpretation. *Exxon Research*, 265 F.3d at 1375.   Nor is a claim indefinite merely because it poses a difficult issue of claim construction.   *Id.*   The Federal Circuit has explained that "[i]f the meaning of the claim is discernible, even though the task may be formidable and the construction may be one over which reasonable persons will disagree . . . the claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds."   *Id.*   By finding claims indefinite only if reasonable efforts

at claim construction prove futile, respect is given to the statutory presumption of patent validity, and the inventive contribution of patentees is protected.  *Id.*; *see also Honeywell*, 341 F.3d at 1338 (stating that a claim is indefinite if neither the claims, the written description, nor the prosecution history help the court interpret the ambiguous term.).

Here, Fenwal cannot establish that Claim 16 is "insoluably ambiguous" as a matter of law.  In fact, the Federal Circuit refused to find Claim 16 indefinite despite Fenwal's contention because of at least one genuine issue of material fact.  Specifically, the parties failed to "argue or point to any evidence indicating whether or not including the tubing in the construction of *centrifugal unit* makes the radius and height measurements indiscernible to one of ordinary skill in the art and where around the tubing the measurements are to be made (SGI Response ¶28)."  Therefore, expert testimony is necessary to determine whether Claim 16 is indefinite.  And if expert testimony establishes an issue of fact as to indefiniteness, summary judgment is inappropriate.  *See Exxon Research*, 265 F.3d at 1375.

In response to the Federal Circuit's request for expert testimony, Haemonetics has obtained the declaration of Dr. Albert Russell.  As discussed above, Dr. Russell opines that Claim 16 recites *a plurality of tubes* and not *the plurality of tubes* (SGI ¶28).  According to Dr. Russell, the language of Claim 16 does not indicate that there must be one and only one *plurality of tubes*.  *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) (holding that the common patent law meaning of the terms "a" or "an" mean "one or more"); *see also Free Motion Fitness Inc. v. Cybex Intern., Inc.*, 324 F.3d 1342, 1350-51 (Fed. Cir. 2005).  To the contrary, the plain language contemplates the existence of multiple structures that may satisfy the *plurality of tubes* element.

Dr. Russell's opinion also comports with the Federal Circuit's Opinion.  While relying upon the fact that Claim 16 is directed to an alternative embodiment, the Federal Circuit clarified that the *centrifugal unit* of that embodiment must comprise both *a vessel* and *a plurality of tubes* (SGI ¶11).  A skilled artisan would have understood that an embodiment drawn to a *unit* comprised of both *a vessel* and *a plurality of tubes* is necessarily read on by a *unit* comprised of

both *a vessel* and an integrated *plurality of tubes* (SGI ¶28).  Dr. Russell's testimony on a skilled artisan's reading of Claim 16 is thus consistent with the Federal Circuit's Opinion.

Dr. Russell's testimony is warranted.  *See Papyrus Tech. Corp. v. New York Stock Exchange, LLC*, 257 F.R.D. 39, 45 (S.D.N.Y. 2009) ("As this case is still at the summary judgment stage, where the purpose is to determine whether a genuine issue as to any material fact exists, admitting the *Declaration* will safeguard Papyrus's right to protect its patent and prevent infringement at this stage of the proceedings.").  As in *Papyrus*, admission of Dr. Russell's testimony is both proper and necessary to safeguard Haemonetics' right to protect its patent, particularly where, as the Federal Circuit recognized, a skilled artisan's understanding of *a plurality of tubes* and its corresponding impact on the *height* and *radius* of the *centrifugal unit* is an issue to which no expert evidence was previously presented (SGI ¶12).

Nevertheless, Fenwal seeks summary judgment based on a single phrase within the Federal Circuit's indefiniteness analysis referencing the umbilicus (Fenwal Motion at 19).  In context, however, this statement is merely a request for expert testimony on the issue of how a skilled artisan would measure the *centrifugal unit* of Claim 16.  Underlying that decision is the threshold issue of whether a skilled artisan would understand the Centrifugal Tubes to be *a plurality of tubes*.  If a skilled artisan considered the Centrifugal Tubes to be *a plurality of tubes*, then measuring the *centrifugal unit* is simply measuring the *centrifugal component*.  Fenwal fails to proffer any expert testimony to rebut this point, tacitly acknowledging the issues of fact foreclosing summary judgment.  Simply omitting evidence does not make summary judgment proper.

Dr. Russell's testimony makes clear that one of ordinarily skill in the art could have understood the Centrifugal Tubes to be *a plurality of tubes* (SGI ¶29).  A skilled artisan applying this understanding would have measured the dimensions of the *centrifugal unit* to be coextensive with the dimensions of the vessel (SGI ¶33).  In light of Dr. Russell's testimony and the Federal Circuit's recognition that expert testimony on the issue is determinative of indefiniteness, Claim 16 cannot be indefinite.  At minimum, a genuine issue of material fact exists as to how one of

ordinary skill in the art would understand the dimensions of Claim 16, making summary judgment inappropriate.

## IV.   CONCLUSION

For the reasons set forth above, Haemonetics respectfully submits that Fenwal's Summary Judgment Motion should be denied.

Respectfully submitted this 10th day of December, 2010.

HAEMONETICS CORPORATION,

By its Attorneys:

/s/ Margaret H. Paget
James W. Matthews
*jwmatthews@sherin.com*
Margaret H. Paget
*mhpaget@sherin.com*
Peter F. Herzog
*pfherzog@sherin.com*
SHERIN AND LODGEN LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000

-and-

Deepro R. Mukerjee
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400

Kamran Jivani
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document will be electronically served upon the attorney of record for each other party through the CM/ECF system.


Dated:  December 10, 2010                    _____/s/ Margaret H. Paget_____