UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HAEMONETICS CORP.,                          :       *LEAVE TO FILE GRANTED 1/26/11*

                        Plaintiff,          :
            v.                                      Civil Action Nos.
                                            :       05-12572-NMG
FENWAL, INC.,                                       09-12107-NMG
                                            :
                        Defendant.
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FENWAL, INC.'S (1) RESPONSE TO HAEMONETICS CORP.'S
STATEMENT OF ADDITIONAL MATERIAL FACTS
AND (2) FENWAL, INC.'S STATEMENT OF FURTHER MATERIAL
FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**FENWAL'S RESPONSE TO HAEMONETICS'**
**STATEMENT OF ADDITIONAL MATERIAL FACTS**

1.      The patent-in-suit is U.S. Patent No. 6,705,983 and is entitled "Compact

Centrifuge Device and Use of Same."  U.S. Patent No. 6,705,983 (attached as Exhibit A).  The

patent lists Jean-Denis Rochat as the inventor and does list Haemonetics as the assignee.  *Id.*

        **Response to No. 1:**  Fenwal does not dispute that the patent-in-suit is the '983 patent and

that the '983 patent lists Jean-Denis Rochat as the inventor and lists Haemonetics as the assignee.


2.      The 09/958,467 patent application ("the '467 application") issued as the '983

patent.  09/958,467 patent application.  (Fenwal Exhibit 2).  The '467 application was originally

filed with 21 claims.

        **Response to No. 2:**  Fenwal does not dispute that the '467 application issued as the '983

patent and that the '467 application was originally filed with 21 claims.


3.      Rochat filed a Preliminary Amendment on October 5, 2001 that canceled as-filed

claims 1-21 and added claims 22-42.  Preliminary Amendment, Oct. 5, 2001 (attached as Exhibit

B).  As-amended claims 22, 36, and 40 correspond to issued claims 1, 16, and 20.

        **Response to No. 3:**  Fenwal does not dispute that Rochat filed a Preliminary Amendment

on October 5, 2001 that canceled as-filed claims 1-21 and added claims 22-42.  Fenwal also does

not dispute that as-amended claims 22, 36, and 40 correspond to issued claims 1, 16, and 20,

respectively.

4.      In its September 11, 2003 Amendment to the '467 application, Haemonetics amended claims 36 and 40 to require "a radius between 25 and 50 mm and a height between 75 and 125% of the radius."  September 11, 2003 Amendment (attached as Exhibit D).

**Response to No. 4:**  Undisputed, although it should be noted that the Amendment included other amendments to claims 36 and 40 in addition to those stated above as well as (1) amendments to other pending claims, (2) the addition of claim 43, (3) numerous amendments to the specification, and (4) the submission of Replacement Sheets to replace Figures 1 and 2.

5.      Independent claim 16 recites:

A centrifugal unit comprising a centrifugal component and a plurality of tubes, said unit to turn around an axis to separate the components of a liquid, blood in particular, with such plurality of tubes displaying a single tubular component wherein said unit includes:

a base in the form of a disk;

an external cylindrical wall extending from the base;

an internal cylindrical wall extending from the base and separated by the external wall so as to define a ring-shaped separation chamber among each other;

a tubular housing almost extending coaxially to said rotating axis from the base to receive an end of a tubular unit; and

a plurality of channels extending radially in the base of the centrifugal unit, with each channel providing communication between a respective tube of the tubular unit and the separation chamber, with the centrifugal unit having a radius between 25 and 50 mm and a height between 75 and 125% of the radius.

'983 Patent at col. 10, line 63-col. 11, line 15.

**Response to No. 5:**  Undisputed to the extent that the quoted language accurately reflects the language in issued claim 16.

6.      On December 22, 2005, Haemonetics filed a patent infringement suit against Baxter Healthcare Corporation  and Baxter International,  Inc. (collectively, "Baxter")  asserting infringement of the '983 patent.  Complaint (2005 D.I. 1).  On March 27, 2007, Baxter and Fenwal entered an assented to motion for joinder of Fenwal, Inc. as a Defendant to the action. Assented-To Mot. to Join Fenwal Inc. as a Def. and Amend the Stipulated Protective Order at 1 (2005 D.I. 37).  The Court granted this motion and joined Fenwal as a Defendant on July 5, 2007.  Order of July 5, 2007, Granting Mot. for Joinder (attached as Exhibit F).  Haemonetics asserted infringement of claims 1-7, 9, 16 and 17 of the '983 patent against Baxter and Fenwal. Claims Being Asserted (2005 D.I. 22).

**Response to No. 6:**  Undisputed, although it should be noted that Haemonetics and Fenwal filed a Joint Motion To Remove Baxter International Inc. As A Defendant on February 28, 2006 (2005 D.I. 8), which was granted by the Court on March 3, 2006, (Order Dated March 3, 2006 Granting Joint Mot. To Remove Baxter Int'l , Inc. As A Def.) (Johnston Decl. Ex. 1).[1]  It should also be noted that following claim construction, Fenwal moved for partial summary judgment of noninfringement of claims 1-7 and 9 (SOF ¶ 13),[2] which was granted by the Court (*id.*).  Lastly, it should be noted that Haemonetics did not assert equivalents of any claim terms at trial, (SOF ¶ 14), and withdrew its allegation of infringement of claim 17 prior to trial, (*id.*).


7.      A jury, after hearing all of the facts in that action, returned a verdict for Haemonetics, finding that the '983 patent was not invalid and that Fenwal's ALYX system

---

[1]  References to "Johnston Decl." are to the Records Declaration of Timothy D. Johnston In Support of Fenwal, Inc.'s Reply Memorandum in Support of Its Motion for Summary Judgment.

[2]  References to "SOF" are to Fenwal, Inc.'s Local Rule 56.1 Statement in Support of its Motion for Summary Judgment (2009 D.I. 68).

infringed '983 patent.  2005 D.I. 283.  The jury found that Fenwal's ALYX system infringed claim 16 of '983 patent.  *Id.*

**Response to No. 7:**  Disputed.  The evidence at trial went only to infringement by the *separation cups* used in the ALYX System, not "Fenwal's ALYX System."  Furthermore, as evidenced by the Court's injunction ruling, the jury found only that the *separation cups* used in the ALYX System, not "Fenwal's ALYX System," infringed claim 16 of the '983 patent.  *See* Permanent Injunction & Provisional Royalty at 1 (2005 D.I. 329)[3] ("On January 30, 2009, a jury determined that the *separation cup* used in Alyx System disposable kits manufactured by defendants Baxter Healthcare Corp. and Fenwal, Inc. ('Fenwal') infringed Claim 16 of U.S. Patent No. 6,705,983 . . . .").[4]

8.     After the jury's verdict, the Court entered a permanent injunction enjoining Fenwal from making, using, distributing, offering to sell, or selling its infringing ALYX system disposable kit beginning on December 1, 2010.  Order Granting Preliminary Injunction and Provisional Royalty (2005 D.I. 329).  The Court also ordered that Fenwal pay Haemonetics $11,335,935 for lost profits as a result of the infringement and royalty damages of $4,349,835, along with pre-judgment interest.  *Id.*  The Court ordered Fenwal to pay Haemonetics a royalty amount of 10% of Fenwal's net sales revenue from the sale of each ALYX system disposable sold on or after January 31, 2009.  *Id.*

**Response to No. 8:**  Fenwal does not dispute that (1) the Court entered an injunction on June 1, 2009, (2) the injunction was to take effect on December 1, 2010, and (3) in the injunction,

---

[3]  References to "2005 D.I." are to docket entries in Civil Action No. 05-12572-NMG and references to "2009 D.I." are to docket entries in Civil Action No. 09-12107-NMG.

[4]  Emphasis is added throughout unless otherwise indicated.

the Court ordered Fenwal to pay Haemonetics a royalty equal to 10% of Fenwal's net sales for each ALYX System disposable kit sold on or after January 31, 2009.  However, the relevant portion of the injunction prohibits Fenwal from "making, using, distributing, offering to sell or selling the Alyx System disposable kits (*as embodied by Trial Exhibit 1240*), or any other blood component *separation chamber* that infringes the '983 patent."  (2005 D.I. 329.)  It should also be noted that (1) the Court ordered Fenwal to pay Haemonetics $11,335,935 for lost profits as a result of the infringement and royalty damages of $4,349,835 in its Judgment In A Civil Case (2005 D.I. 314) and not in the injunction, and (2) that the injunction was amended by the Court's order of June 24, 2009 (2005 D.I. 335).

9.      Fenwal appealed the Court's amended judgment.  Fenwal's appeal included the Court's Order Granting Preliminary Injunction and Provisional Royalty.  Fenwal Appeal (attached as Exhibit K).

**Response to No. 9:**  Fenwal does not dispute that it appealed the Court's amended judgment.  However, it should be noted that, among other things, Fenwal also appealed the Preliminary Injunction & Provisional Royalty order entered on June 1, 2009 (2005 D.I. 329), as amended by the Memorandum & Order dated June 24, 2009 (2005 D.I. 335).  Notice of Appeal (2005 D.I. 337).

10.      On June 2, 2010, the Federal Circuit reversed in part, vacated in part, and remanded in part, this Court's grant of Haemonetics' motion seeking judgment as a matter of law that claim 16 of the '983 patent was not indefinite, the jury's finding that the Fenwal had infringed the '983 patent and the jury's damages award. *Haemonetics Corp. v. Baxter*

*Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).  The Federal Circuit held that

"'centrifugal unit' in claim 16 consistently means a vessel and a plurality of tubes." *Id.*

**Response to No. 10:**  Fenwal does not dispute that the Federal Circuit reversed the

Court's claim construction of "centrifugal unit" and held that "'centrifugal unit' in claim 16

consistently means a vessel and a plurality of tubes." *Haemonetics*, 607 F.3d at 783.  Fenwal

also does not dispute that the Federal Circuit vacated the Court's grant of judgment as a matter of

law that claim 16 of the '983 patent is not indefinite. *Id.* at 783-84.  Lastly, Fenwal does not

dispute that the Federal Circuit (1) vacated the verdict that the ALYX System cups infringed the

'983 patent, and (2) vacated the award of prospective remedies and remanded the case to this

Court for proceedings consistent with its opinion. *Id.* at 784.


11.     The Federal Circuit's Opinion found that the term centrifugal unit as used

throughout Claim 16 includes both a centrifugal component (i.e. a vessel) and a plurality of

tubes. *Id.*  at 783.

**Response to No. 11:**  Fenwal does not dispute that the Federal Circuit held that, as used

each time in claim 16, "centrifugal unit" means "a vessel and a plurality of tubes."


12.     Prior to the Federal Circuit's pronouncement, Haemonetics and this Court

understood the term centrifugal unit to refer to the vessel alone in all instances within Claim 16

and the remaining claims of the '983 Patent. 2005 D.I. 51.  As such, heretofore, Haemonetics

never had to determine every structure in the ALYX Cup which could plausibly be a plurality of

tubes – it only had to identify one such structure.

**Response to No. 12:**  Disputed.  Contrary to Haemonetics' assertion, the Court did not understand "the term *centrifugal unit* to refer to the vessel alone in all instances within Claim 16."  Instead, the Court held "with the exception of its use in the first line of Claim 16 in which "centrifugal unit" is defined as comprising various components, 'centrifugal unit,' as used in Claim 16 . . . will be construed as referring exclusively to the vessel itself."  Memorandum & Order at 13-14 (2005 D.I. 51).  Moreover, the parties stipulated (SOF ¶ 12) and the Court held (SOF ¶ 34) that "plurality of tubes" means "two or more conduits that transport liquid materials (e.g. blood and blood components) *into and out of the vessel*."  Thus, as stipulated to and as the Court held, the conduits must transport blood and blood components "into and out of the vessel." The only structure in the '983 patent and the ALYX System that fits within the stipulated definition of "plurality of tubes" is the umbilicus.  *See* Reply, Section I.[5]

13.     Prior to this motion for summary judgment, the inquiry consuming much of this Court's time and resources centered on whether the tubing had to be included when measuring the height and radius of the unit itself.  2005 D.I. 51.

**Response to No. 13:**  Haemonetics' assertion that "the inquiry consuming much of this Court's time and resources centered on whether the tubing had to be included when measuring the height and radius of the unit itself" is a subjective and unsupported assumption.  Haemonetics cannot know what has been consuming the Court's time.

14.     Citing to Column 3, lines 20-35 of the '983 Patent, the Federal Circuit found that Claim 16 was directed to "another embodiment" separate from the one depicted in the patent

---

[5]  References to "Reply" are to Fenwal, Inc.'s Reply Memorandum In Support Of Its Motion For Summary Judgment submitted herewith.

figures. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).

According to the Federal Circuit, the centrifugal unit of that embodiment contains both a

centrifugal component and a plurality of tubes. The centrifugal unit has radius of 25-50 mm and

a height of 75%-125% of the radius. *Id.* at 782.

**Response to No. 14:** Disputed. The Federal Circuit did not hold that the embodiment of

claim 16 was "separate from the one depicted in the patent figures." *See Haemonetics Corp. v.*

*Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). The portion of the Federal

Circuit's opinion cited by Haemonetics does not discuss the claimed embodiments in relation to

the patent figures.


15.     The Federal Circuit never opined on what structures could be a plurality of tubes.

*Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). The Federal

Circuit instead correctly centered its focus on what had been previously argued in the prior

proceedings — all of which exclusively involved the umbilicus. *Id.*

**Response to No. 15:** Disputed. The Federal Circuit repeatedly defined the claimed

"plurality of tubes" as the question mark-shaped umbilicus – "The '983 patent describes a

centrifugal device comprising (1) a vessel in which blood components are separated in a

separation chamber and (2) tubing through which blood flows in and out of the vessel. The

tubing connects the spinning vessel to a non-rotating support structure, forming *a question mark-*

*shaped loop around the vessel*" (*Haemonetics*, 607 F.3d at 778; SOF ¶ 25); "Figure 1 shows the

configuration of the *vessel, marked as number 2, and its associated tubing, numbers 4a, 5a, and*

*6a, which are enclosed in tubular component 9*" (*id.* at 779; SOF ¶ 26); and "[T]his court lacks

any evidence in the record or any argument by the parties directed to where the height or radius

are to be measured when the *centrifugal unit includes not only the circular vessel but also the off-set, question mark-shaped tubes*" (*id.* at 784; SOF ¶ 28).

16.     Notwithstanding Fenwal's indefiniteness arguments, the Court declined to find Claim 16 indefinite. *Id.* at 783.

**Response to No. 16:** Disputed. Haemonetics' statement is misleading. Based on its corrected claim construction for "centrifugal unit," the Federal Circuit "vacated[d] the district court's grant of JMOL and remand[ed] for a determination of the meaning of 'radius' and 'height' under the correct claim construction of 'centrifugal unit' and of whether claim 16 is indefinite." *Id.* at 784. Thus, the Federal Circuit did not "decline to find Claim 16 indefinite" as Haemonetics asserts. Instead, the Federal Circuit declined to analyze the indefiniteness of claim 16 and instead remanded the case to the Court to determine the indefiniteness of claim 16.

17.     Fenwal attempted to design around the '983 patent by increasing the height of its ALYX cups, but not changing the radii, by casting the walls of each cup to create a Protrusion, a hollow circle extending beyond the cup's corresponding base. (Crowder Dep. 39:6-41:2; 70:1-70:12 (Apr. 9, 2010) (attached as Exhibit H)).

**Response to No. 17:** Disputed. The cited evidence does not support the assertion that Fenwal did "not chang[e] the radii" of the redesigned ALYX System vessels and increased the heights of the redesigned ALYX System vessels "by casting the walls of each cup to create a Protrusion, a hollow circle extending beyond the cup's corresponding base." The cited document only makes clear the location of the additional height and never discusses the radii of the redesigned ALYX System vessels. Fenwal does not dispute that the height of the redesigned

ALYX System vessels is 9.5 mm greater than the height of the original ALYX System vessels

and that the radius of the redesigned ALYX System vessels is the same as the radius of the

original ALYX System vessels.

18.     The Protrusion of the 2RBC ALYX Cup is continuous and forms a complete ring

around the base of the cup while the Protrusion of the Plasma ALYX Cup is a semicircle and

does not extent [sic] around the entire circumference of the base of the cup, thereby creating a

notch in the base of the cup.  (Crowder Dep. 51:2-17; 54:1-13 (Apr. 9, 2010) (attached as Exhibit

H)).  The notch exists solely for ease of manufacturing.  (Crowder Dep. 49:5-20 (Apr. 9, 2010)

(attached as Exhibit H)).

**Response to No. 18:**  Disputed.  Fenwal does not dispute that the height of the

redesigned ALYX System RBC vessel is 9.5 mm greater than the height of the original ALYX

System RBC vessel, around the entire circumference of the vessel.  Fenwal also does not dispute

(1) that the height of the redesigned ALYX System RBC Plasma vessel is 9.5 mm greater than

the height of the original ALYX System RBC Plasma vessel, (2) that there is a "notch" in the

base of the redesigned RBC Plasma vessel, and (3) that the "notch" exists for manufacturing

purposes.  That the "notch" exists "solely" for ease of manufacturing is not supported by the

cited evidence.

19.     The bases of both of the Elevated ALYX Cups remain in their original positions,

and blood never touches the Protrusion, thereby making this modification a non-functioning

change, as Fenwal has repeatedly admitted.  (See, e.g., Brown Dep. 105:16-106:10, 107:4-20;

108:17-109:10, 149:13-19; 179:3-180:1, 223:7-226:13, 232:6-233:21 (attached as Exhibit I); Crowder Dep. 119:20-120:15 (Apr. 9, 2010) (attached as Exhibit H)).

**Response to No. 19:**  Haemonetics' assertions that "the bases of the [redesigned] ALYX Cups remain in their original positions" and that "blood never touches the Protrusion" are ambiguous, nonsensical, and not supported by the cited evidence.   To the extent the assertions could be comprehended, Fenwal disputes them.  Fenwal does not dispute that Ms. Crowder and Mr. Brown testified that the prior versions of the separation cups and the redesigned versions of the separation cups have the same "primary" function, which is to separate blood components. (HEx. I at 105:13-107:11.)[6]  Fenwal notes, however, that a proper analysis under the doctrine of equivalents compares the features of the accused device with the elements of the claims of the patent that is allegedly infringed, not with the features of another device.  *See, e.g.*, *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997); *Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 400 (Fed. Cir. 1986); *see also* Reply, Section III.  Therefore, whether the "modification" was a non-functioning change is irrelevant.

20.     Haemonetics brought this action on December 14, 2009, to enforce its rights in the '983 Patent and under this Court's injunction.  (2009 D.I. 1).

**Response to No. 20:**  Disputed.  Fenwal does not dispute that Haemonetics filed a complaint against Fenwal on December 14, 2009 alleging infringement of the '983 patent. Haemonetics did not assert that it was enforcing its rights under this Court's injunction.

---

[6]  References to "HEx." are to Exhibits to Affidavit of Counsel in Support of Plaintiff Haemonetics Corporation's Memorandum in Opposition to Defendant Fenwal, Inc.'s Motion for Summary Judgment (2009 D.I. 72).

21.     Despite its summary judgment arguments to the contrary, Fenwal has repeatedly admitted that there is no difference between the Infringing ALYX Cups and the Elevated ALYX Cups but for the Protrusion.  (See, e.g., Brown Dep. 105:16-106:10, 107:4-20; 108:17-109:10, 149:13-19; 232: 6-233:21 (Apr. 14, 2010) (attached as Exhibit I)).  Fenwal has repeatedly characterized the two sets of cups as "substantially similar."  (Crowder Dep. 30:20-31:7 (Apr. 9, 2010) (attached as Exhibit H)).

**Response to No. 21:**  Disputed.  Fenwal representatives Kathleen Crowder and Robert Brown testified that Fenwal made numerous changes to the RBC Chamber, including adjusting the height, adding ribs, thinning the walls, thickening the lid, and filling in holes in the lid, which led to better balancing of the spinning chamber.  Crowder Dep. Tr. 38:15-39:5, 46:18-20 (Johnston Decl. Ex. 2); Brown Dep. Tr. 110:8-113:17 (Johnston Decl. Ex. 3).  The portion of the Crowder transcript cited by Haemonetics does not support the assertion that Fenwal has "repeatedly characterized" the prior versions of the cups and the redesigned cups as "substantially similar."  Rather, it generally discusses the concept of "substantial equivalence" under FDA regulations.  It does not discuss that concept as it relates to the ALYX System centrifugal units.  In any event, such evidence would be immaterial to the present motion because the Federal Circuit has squarely held that "FDA equivalence is irrelevant to patent law because it involves fundamentally different inquiries."  *Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1349 n.3 (Fed. Cir. 2008).

22.     In light of the Federal Circuit's Opinion and this Court's July 13, 2010 Order, on September 3, 2010, Haemonetics served new infringement contentions applying the changed construction of centrifugal unit to the Original and Elevated ALYX Cups.  2009 D.I. 59.  The

contentions identify the Centrifugal Tubes noted above as a plurality of tubes infringing Claim 16. *Id.*

      **Response to No. 22:**  Disputed.  Fenwal does not dispute that Haemonetics served new infringement contentions on September 3, 2010.  Fenwal does dispute that the so-called "Centrifugal Tubes" identified by Haemonetics are the claimed "plurality of tubes."  As noted above, the parties stipulated (SOF ¶ 12) and the Court held (SOF ¶ 34) that "plurality of tubes" means "two or more conduits that transport liquid materials (e.g. blood and blood components) *into and out of the vessel*."  Thus, as stipulated to and as the Court held, the conduits must transport blood and blood components "into and out of the vessel."  Structures that are entirely contained within the vessel, as is the case with Haemonetics' so-called "Centrifugal Tubes," can only transport liquids *within* the vessel; they cannot transport blood "into and out of the vessel." *See* Reply, Section I.  Accordingly, Haemonetics' so-called "Centrifugal Tubes" do not fit within the definition of "plurality of tubes."  Moreover, Haemonetics is estopped from asserting any structure other than the umbilicus as the "plurality of tubes."  *Id.*


      23.     On October 13, 2010, the Court denied Haemonetics' motion for a status conference.  2009 D.I. 65.  In its Order, the Court stated:   "Furthermore, the doctrine of judicial estoppel prevents Haemonetics from now asserting a different construction of 'plurality of tubes.'" *Id.*

      **Response to No. 23:**  Fenwal does not dispute that the Court denied Haemonetics' motion for a status conference holding that "the doctrine of judicial estoppel prevents Haemonetics from now asserting a different construction of 'plurality of tubes."  (2009 D.I. 65.)

24.     In its February 20, 2007 Claim Construction brief, Haemonetics stated that: "The parties have been able to agree on the literal construction of most of the claim terms or phrases for which construction may be necessary or appropriate.  These terms or phrases are set forth in Exhibit C to this Memorandum.  However, there remain a few terms as to which the parties have not been able to reach agreement and which require construction by this court.  These are….. 'A centrifugal unit comprising a centrifugal component and a plurality of tubes'..." 2005 D.I. 32 at 6-7.

**Response to No. 24:**  Fenwal does not dispute that Haemonetics stated in its February 20, 2007 Claim Construction brief that:  "The parties have been able to agree on the literal construction of most of the claim terms or phrases for which construction may be necessary or appropriate.  These terms or phrases are set forth in Exhibit C to this Memorandum.  However, there remain a few terms as to which the parties have not been able to reach agreement and which require construction by this court," which include "[a] centrifugal unit comprising a centrifugal component and a plurality of tubes."

25.     Haemonetics attached as Exhibit C to its Memorandum of Law a document entitled "Table A — Stipulated Constructions For The '983 Patent."  2005 D.I. 32-11 at 1.  In the column entitled "Proposed Construction," this table lists "[t]wo or more" for the term "plurality" as used in claims 1-17.  *Id.* at 5.  In the column entitled "Proposed Construction," this table lists "[c]onduits that transport liquid materials (e.g., blood and blood components) into and out of the vessel" for the term "tubes" as used in claims 1-22.  *Id.* at 5.

**Response to No. 25:**  Fenwal does not dispute that Exhibit C to Haemonetics' Memorandum of Law, a document entitled "Table A — Stipulated Constructions For The '983

Patent," lists "[t]wo or more" as the proposed claim construction for the term "plurality" as used in claims 1-17 and lists "[c]onduits that transport liquid materials (e.g., blood and blood components) into and out of the vessel" as the proposed claim construction for the term "tubes" as used in claims 1-22.

26.     This Court previously found, a plurality of tubes means "two or more conduits that transport liquid (e.g. blood and blood components) into and out of the vessel."  2005 D.I. 55 The parties agreed to this construction and that agreement remains intact today.

**Response to No. 26:**  Disputed.  Fenwal does not dispute that the Court previously held that "plurality of tubes" means "two or more conduits that transport liquid materials (e.g. blood and blood components) into and out of the vessel."  Memorandum & Order at 6 (2009 D.I. 65). Fenwal does, however, dispute the citation to "2005 D.I. 55."  This docket entry is for Defendant Fenwal's Memorandum In Support Of Its Motion For Partial Summary Judgment Of Noninfringement.

27.     Claim 16 requires the claimed unit to "turn around an axis to separate the components of a liquid" (see the '983 Patent, col. 10: ln. 64-5, Claim 16).  Applying the Federal Circuit's Opinion to the explicit claim language requires that <u>both</u> the component and a plurality of tubes must "turn around an axis."  *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010).  Therefore, one of ordinary skill in the art would understand Claim 16 to require both the vessel and "a plurality of tubes" to be part of the "centrifugal unit" and that the entire "centrifugal unit" of Claim 16 must rotate about an axis.  December 10, 2010 Declaration of G. Albert Russell, PhD. ("Russell Decl.") ¶¶ 9-11, attached as Exhibit L.

**Response to No. 27:**  Disputed.  Fenwal does not dispute that claim 16 requires the centrifugal unit to turn around an axis to separate the components of a liquid.  Fenwal also does not dispute that the Federal Circuit held that "centrifugal unit" means "a vessel and a plurality of tubes," (SOF ¶ 21) and thus, as claimed, the "centrifugal unit" comprises the "centrifugal component" (vessel) and the "plurality of tubes."  Lastly, Fenwal does not dispute that under the Federal Circuit's new claim construction of "centrifugal unit," both the "centrifugal component" and the "plurality of tubes" turn around an axis.

28.     Based on the language of Claim 16 and the Federal Circuit's construction, a person of ordinary skill would understand the entire "centrifugal unit" of Claim 16 to have a radius between 25 and 50 mm and a height between 75 and 125% of the radius.  Russell Decl. ¶ 12.  One of ordinary skill in the art would also understand that the '983 Patent may have more than one set of tubes as Claim 16 recites "a" plurality of tubes and is not limited to a single set of tubes, as nowhere does Claim 16 state that there is only one "plurality of tubes."  Russell Decl. ¶ 13, Exhibit L.

**Response to No. 28:**  Disputed.  Fenwal does not dispute that under the Federal Circuit's revised claim construction of "centrifugal unit" to mean "a vessel and a plurality of tubes," (SOF ¶ 21), a person of ordinary skill in the art would understand the "centrifugal unit" of claim 16 to have a radius between 25 and 50 mm and a height between 75 and 125% of the radius.  Fenwal does dispute that one of ordinary skill in the art would understand that the '983 patent may have more than one set of tubes because claim 16 recites "a" plurality of tubes and is not limited to a single set of tubes, as nowhere does claim 16 state there is only one "plurality of tubes."  Under U.S. patent practice, "[t]he first time an element or part is mentioned [in a claim], it should not

be preceded by a definite article ("the") . . . . Instead the indefinite article ("a" or "an") should be used . . . ."  Robert C. Faber, Landis On Mechanics Of Patent Claim Drafting. § 23 (4th ed., Practising Law Institute 1999) (Johnston Decl. Ex. 4).  Thus, use of the indefinite article "a" does not inform one of ordinary skill in the art that the '983 patent may have more than one set of tubes.

29.     Using Fenwal's '148 Patent to illustrate, Figure 22 (see Figure 4 below) shows a set of integrated tubes beginning at the base 150, extending through hub 120, and ending with the nipples 180.  One of ordinary skill in the art would understand these internal tubes to be "a plurality of tubes" as stated in Claim 16.  Russell Decl. ¶ 14, Exhibit L.

**Response to No. 29:**  Disputed.  Initially, it should be noted that U.S. Patent 6,284,148 is entitled, "Method For Anisotropic Etching Of Silicon."  Based on a review of Haemonetics' new infringement contentions (2009 D.I. 59), it appears that Haemonetics meant to reference U.S. Patent No. 6,284,142.  As noted above, the structures beginning at the base 150, extending through hub 120, and ending with the nipples 180 in Figure 22 of the '148 patent cannot be the "plurality of tubes" recited in claim 16 of the '983 patent.  The parties stipulated (SOF ¶ 12) and the Court held (SOF ¶ 34) that "plurality of tubes" means "two or more conduits that transport liquid materials (e.g. blood and blood components) *into and out of the vessel*."  Structures that are entirely contained within the vessel, as is the case with the structures beginning at the base 150, extending through hub 120, and ending with the nipples 180 in Figure 22, can only transport liquids *within* the vessel; they cannot transport blood "into and out of the vessel."  Thus, the structures beginning at the base 150, extending through hub 120, and ending with the nipples 180,

do not fall within the stipulated construction of "tubes" and, as such, cannot be the "plurality of tubes" recited in claim 16.

Moreover, as discussed in the Reply (*see* Section I), the Russell Declaration has identified no disclosure whatsoever in the '983 patent to support his conclusion that the "plurality of tubes" can be molded structures within the vessel. That is because there is none. Every time the '983 patent describes the "plurality of tubes," it is with respect to the tubular component 9 and the three tubes 4a, 5a, and 6a within the tubular component 9, and not to a vessel having integrally molded "tubes." What Haemonetics now calls "Centrifugal Tubes" or "internal tubes" are, in the '983 patent, called "channels" (and numbered 4, 5, and 6 in the drawings) and *not* "tubes." Indeed, in the *Markman* proceedings, Haemonetics' own counsel argued: "There is nowhere in the entire specification, nowhere in the prosecution history, in which the centrifugal unit is referred to as a combination of the centrifugal cup or bowl and the tubes. Nowhere." (SOAF ¶ 5.) Additionally, on appeal, Haemonetics similarly argued: "Nowhere does the Specification suggest, either explicitly or implicitly, that the *height and radius* may include the length of the tubing associated with the vessel." (SOAF ¶ 6) (emphasis in original) (internal citations omitted). Without any support in the specification, such a reading of the claims would fail the written description requirement of patent law, 35 U.S.C. § 112, ¶ 1. *Eli Lilly & Co. v. Teva Pharms. USA, Inc.*, 619 F.3d 1329, 1345 (Fed. Cir. 2010) ("As this court recently confirmed, the test for written description is whether the disclosure of the application . . . reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.") (internal quotation marks and citations omitted). Thus, the only "plurality of tubes" supported by the '983 patent is the umbilicus.

30.   And as depicted below the Centrifugal Tubes are a set of three tubes (or conduits) housed within the centrifugal component which form the pathway to transport blood into and out of the vessel.  Russell Decl. ¶ 15, Exhibit L.



**FIGURE 4**

**Response to No. 30:**  Disputed.  As noted above, the parties stipulated (SOF ¶ 12) and the Court held (SOF ¶ 34) that "plurality of tubes" means "two or more conduits that transport liquid materials (e.g. blood and blood components) *into and out of the vessel*."  Thus, as stipulated to and as the Court held, the conduits must transport blood and blood components "into and out of the vessel."  Structures that are entirely contained within the vessel, as is the case with Haemonetics' "Centrifugal Tubes," can only transport blood *within* the vessel; they cannot transport blood "into and out of the vessel."  *See* Reply, Section I.  The only component that can perform this function is the umbilicus.  *Id.*  And, as noted above, what Haemonetics now calls "Centrifugal Tubes" within the molded plastic vessel are consistently called "channels" in the '983 patent (and numbered 4, 5, and 6 in the drawings); they are not called "tubes" (which are external to the vessel and numbered as 4*a*, 5*a*, and 6*a* in the drawings).

-19-

31.     The Centrifugal Tubes begin at the base of the ALYX Cups, extend through the hub, and end with the nipples (two or more conduits). These passages specifically allow blood to travel (transport liquid, e.g. blood and blood components) between the channels extending radially in the base of the ALYX Cups to the end of the umbilicus displaying a shaped mount external to the vessel (into and out of the vessel). These internal tubes comprise a set of conduits that transport blood between the vessel and the umbilicus, fulfilling the definition of "a plurality of tubes." Russell Decl. ¶ 15, Exhibit L.

**Response to No. 31:** Disputed. What Haemonetics calls "Centrifugal Tubes" are not "tubes" at all within the meaning of the '983 patent. As noted above, the parties stipulated (SOF ¶ 12) and the Court held (SOF ¶ 34) that "plurality of tubes" means "two or more conduits that transport liquid materials (e.g. blood and blood components) *into and out of the vessel*." Thus, as stipulated to and as the Court held, the conduits must transport blood and blood components "into and out of the vessel." Structures that are entirely contained within the vessel, as is the case with Haemonetics' "Centrifugal Tubes," can only transport blood *within* the vessel; they cannot transport blood "into and out of the vessel." *See* Reply, Section I. Accordingly, Haemonetics' so-called "Centrifugal Tubes" do not fall within the definition of "plurality of tubes."

32.     Because the Centrifugal Tubes (as depicted in Figure 4 above) are set within the component, when the component turns around an axis, so do the Centrifugal Tubes. Russell Decl. ¶¶ 16, 17, Exhibit L.

**Response to No. 32:** Disputed. Fenwal disputes that the defined term "Centrifugal Tubes" is the "plurality of tubes" in claim 16. Fenwal does not dispute that structures integrally

molded within the vessel turn around an axis when the vessel turns around an axis.  As before, Fenwal disputes any suggestion that what Haemonetics calls "Centrifugal Tubes" are "tubes" within the meaning of the '983 patent.


33.     Because the plurality of tubes is molded within the ALYX cup, the dimensions of the ALYX "centrifugal unit" as a whole are same dimensions as that of the ALYX cup.  Russell Decl. ¶ 18.  One of ordinary skill in the art would measure the external dimensions of the functional ALYX cup (both Original and Elevated) to determine whether the cup is of a radius between 25 and 50 mm and a height between 75 and 125% of the radius.  *Id.*

**Response to No. 33:**  Disputed.  As noted earlier, a "plurality of tubes" cannot, under the '983 patent, be molded within the . . . cup."  Throughout these proceedings, Fenwal has repeatedly argued that the radius and height limitations should be construed to refer to the interior dimensions of the separation chamber.  *See, e.g.*, Defs.' Memo. in Support of Mot. for JMOL or New Trial on the Issue of Infringement at 9-11 (2005 D.I. 288) (citing testimony of Dr. Robin Felder, Richard Brown, and Kelly Smith).  Under such a construction, Fenwal would not infringe.  In fact, Haemonetics' expert Dr. Russell conceded at trial that, of the four possible approaches to measuring the original ALYX System RBC vessel, the height-to-radius ratio infringed only under the approach he used—measuring the external outermost dimensions.  Trial Tr. Day 3, 119:15-20 (Johnston Decl. Ex. 5).  Accordingly, one of ordinary skill in the art would not measure the external dimensions of the "functional" ALYX cups as characterized by Dr. Russell to determine whether the cups have a radius between 25 and 50 mm and a height between 75 and 125% of the radius.  Indeed, the lack of any direction in the '983 patent with

respect to how the dimensions should be measure is a central reason why claim 16 is invalid for indefiniteness.

34.     The '983 Patent may have several "pluralities of tubes" fulfilling the requirements recited in the Claim.  Russell Decl. ¶ 19.  The umbilicus is one such set of tubes.  *Id.*  The interior tubes as described above are another such set of tubes.  *Id.*

**Response to No. 34:**  Disputed.  As discussed in the Reply (*see* Section I), the Russell Declaration has identified no disclosure whatsoever in the '983 patent to support his conclusion that the "plurality of tubes" can be molded structures within the vessel.  That is because there is none.  Every time the '983 patent describes the "plurality of tubes," it is with respect to the tubular component 9 and the three tubes 4a, 5a, and 6a within the tubular component 9, and not to a vessel having integrally molded "tubes."  The molded structures within the vessel that Haemonetics now seeks to call "Centrifugal Tubes" are consistently referred to in the '983 patent as "channels" (and are identified in the drawings as structures 4, 5, and 6) and are not "tubes" (which are different structures and identified in the drawings as structures 4*a*, 5*a*, and 6*a*).  Indeed, in the *Markman* proceedings, Haemonetics' own counsel argued:  "There is nowhere in the entire specification, nowhere in the prosecution history, in which the centrifugal unit is referred to as a combination of the centrifugal cup or bowl and the tubes.  Nowhere."  (SOAF ¶ 5.)  Additionally, on appeal, Haemonetics similarly argued:  "Nowhere does the Specification suggest, either explicitly or implicitly, that the *height and radius* may include the length of the tubing associated with the vessel."  (SOAF ¶ 6) (emphasis in original).  Without any support in the specification, such a reading of the claims would fail the written description requirement of patent law, 35 U.S.C. § 112, ¶ 1.  *Eli Lilly & Co. v. Teva Pharms. USA, Inc.*, 619 F.3d 1329,

1345 (Fed. Cir. 2010) ("As this court recently confirmed, the test for written description is whether the disclosure of the application . . . reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.") (internal quotation marks and citations omitted).  Thus, the only "plurality of tubes" supported by the '983 patent is the umbilicus.

Moreover, as noted above, the parties stipulated (SOF ¶ 12) and the Court held (SOF ¶ 34) that "plurality of tubes" means "two or more conduits that transport liquid materials (e.g. blood and blood components) *into and out of the vessel*."  Thus, as stipulated to and as the Court held, the conduits must transport blood and blood components "into and out of the vessel." Structures that are entirely contained within the vessel, as is the case with Haemonetics' "Centrifugal Tubes," can only transport liquids *within* the vessel; they cannot transport blood "into and out of the vessel." *See* Reply, Section I.  Accordingly, Haemonetics' "Centrifugal Tubes" do not fall within the definition of "plurality of tubes" and thus, the only "plurality of tubes" is the umbilicus.

## FENWAL'S STATEMENT OF FURTHER MATERIAL FACTS IN SUPPORT OF ITS REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1.      In its opening *Markman* brief, in discussing claim 16's preamble, "[a] centrifugal unit comprising a centrifugal component and a plurality of tubes," Haemonetics noted that issued claim 16 originated from originally-filed claim 15 of the PCT application, the application from which the '983 patent originated (the "Rochat PCT application"), and that claim 15 was canceled during prosecution and rewritten as claim 36.  Pl. *Markman* Claim Construction Brief at 11 (2005 D.I. 32) (Johnston Decl. Ex. 6).

2.    In support of its argument that the "centrifugal unit" in claim 16 should be construed to mean the vessel alone, Haemonetics stated that the applicant changed the preamble that read as follows:

> 15.   Centrifugal unit (2) to turn around an axis to separate the component of a liquid, blood in particular, with the liquid being supplied and the components removed from the centrifugal unit (2) by a single tubular component (9) comprising a plurality of tubes (4a, 5a, 6a) characterized by the fact that it includes:

to read:

> 36.   A centrifugal unit comprising a centrifugal component and a plurality of tubes, said unit to turn around an axis to separate the components of a liquid, blood in particular, with such plurality of tubes displaying a single tubular component wherein said unit includes.

*Id.* at 12.  Haemonetics also stated:  "The drafting is, perhaps inartful, but the interpretation is clear:  the claim is directed to the combination of the centrifugal unit ('a centrifugal unit comprising a component") and one or more tubes ('a plurality of tubes')."  *Id.*

3.    As shown in Figures 1 and 4 of the '983 patent, 4a, 5a, and 6a are *the long tubes within the umbilicus 9*:



FIG. 1

FIG. 4

4.      In response to Baxter's claim construction arguments relating to "centrifugal unit," Haemonetics again referenced claim 15 of the Rochat PCT application and stated:  "Indeed, the claim itself identified the 'centrifugal unit' of the preamble with the reference numeral (2), and *separately identified the tubing as a distinct element*, with reference numeral (9)."  Pl. Reply *Markman* Claim Construction Brief at 5 (2005 D.I. 40) (Johnston Decl. Ex. 7).

5.      During the *Markman* hearing, in arguing that the dimensions of the centrifugal unit in claim 16 do not include the tubing, Haemonetics' counsel stated: "There is nowhere in the entire specification, nowhere in the prosecution history, in which the centrifugal unit is referred to as a combination of the centrifugal cup or bowl and the tubes. Nowhere." *Markman* Hearing Tr. 29:19-22 (2005 D.I. 53) (Johnston Decl. Ex. 8). Haemonetics' counsel also stated:

> So it's inartful patent drafting, no question about it. But it's understandable and it's reasonably understandable to anyone who has any skill in the art reading this claim. It's pretty clear what is meant. And that, after all, is the ultimate test. Do the claims reasonably tell people who, in good faith, want to understand what they mean and who want to avoid infringing on them? Does it really put them on notice that they may have a problem? And I suggest, your Honor, clearly, it does put people on notice. There's nothing to contradict that anywhere else.

*Id.* at 29:23-30:7.

6.      In its Federal Circuit appeal brief, when arguing that the radius and height dimensions in claim 16 refer only to the centrifugal component, Haemonetics stated: "Indeed, the Specification provides clear evidence that the *height and radius* limitations recited in Claim 16 . . . refers only to the dimensions of the vessel . . . . Nowhere does the Specification suggest, either explicitly or implicitly, that the *height and radius* may include the length of the tubing associated with the vessel." Brief Pl.-Appellee at 50 (Johnston Decl. Ex. 9) (emphasis in original).

7.      At oral argument in the Federal Circuit appeal, the court asked Haemonetics' counsel whether the "another embodiment" recited in the '983 patent (*see* '983 patent, col. 3, lines 20-35) is "claim 16, where [the centrifugal unit] includes the tubes?" The following exchange ensued:

COUNSEL:  Your Honor, I would submit that it is not, your Honor.  I think –
what's being – when read in the specification here –

JUDGE LOURIE:  Why don't we just throw this patent out if it's so difficult to
construe?  Because if your answer had been "yes," then that means the radius and
height – the same numbers – apply to two different objects.

COUNSEL:  But that's not – your Honor – that is not – the specification.  And
when you look at every instance in which these numbers are used for the height
and radius ratio, they're always referred to in the context of the vessel itself.  I
mean, that is the gist of the invention.

JUDGE LOURIE:  You mean the context of –

COUNSEL:  When I say "the vessel," your Honor –

JUDGE LOURIE:  the varying –

COUNSEL:  No, the context within the actual centrifugal – centrifugal unit –
vessel, the component, the cup, the bowl.

JUDGE LOURIE:  See, that's another problem, too.  Is it internal or external
dimensions?

COUNSEL:  They are external dimensions, your Honor.  And during the trial –

JUDGE LOURIE:  Where does that say external dimensions?

COUNSEL:  It comes from two respects, your honor.  First, during trial,
Haemonetics' expert, Dr. Russell, testified that one of ordinary skill in the art who
is designing rotating equipment would always express the structural design of the
device in terms of external dimensions.  And he also made reference, your Honor,
to the specification . . . where they speak of "sizing of the centrifugation –
centrifugation cup or bowl" – and it speaks of reducing the overall dimensions,
weight, price, and volume, and it goes on.  And, with respect to Dr. Russell, and
his testimony at trial, was that to one of ordinary – that would speak to the
external dimensions because when you're building the actual device itself, it is the
forces of the device – I mean, of the vessel – the weight, the top, and the length,
that has the impact on the umbilicus.  So, that's where the ratio comes in that
allows you to build that compact device.

Oral Argument, *Haemonetics Corp. v. Baxter Healthcare Corp.*, No. 2009-1557, at 24:14-26:20

(Fed. Cir. Apr. 5, 2010), *available at* http://oralarguments.cafc.uscourts.gov/mp3/2009-

1557.mp3.


        8.      On September 20, 2010, Haemonetics filed a Writ of Complaint (hereinafter, the

"Writ") (*see* Johnston Decl. Ex. 10 for an English translation of the Writ), in the Regional Court

Düsseldorf alleging that the ALYX System separation cup infringes the German part (DE 600 35 532 T2) (hereinafter, the "German patent") (Johnston Decl. Ex. 11) of European Patent EP 1 491 259 B1 (Johnston Decl. Ex. 12). For the Court's convenience, an English translation of the German patent claims is included as Johnston Decl. Ex. 13.

9.      The German patent is related to the '983 patent by way of the European priority application EP 99810295. Claim 1 of the German patent is similar to claim 16 of the '983 patent and claims "a plurality of conduits (4a, 5a, 6a)," which corresponds to the "plurality of tubes" claimed in claim 16 of the '983 patent. In the Writ, Haemonetics represents to the German court that the claimed "plurality of conduits" are the tubes within the umbilicus. (Johnston Decl. Ex. 10 at 21, 27, 29, 33.) Moreover, Haemonetics consistently identifies elements 4, 5, and 6 as "channels" in the vessel and separately identifies elements 4a, 5a, and 6a as "conduits" in the umbilicus: "In the embodiment example, the channel (4) constitutes the channel for the supply of the blood to be centrifuged . . . . Channels (5) and (6) serve to separate components with different density and to transport these in separated form back to conduits (5a, 6a) connected in the center of the vessel . . . These channels also open up in the middle of the centrifuging vessel into the holder 10 and there into the conduits (5a and 6a) that are accommodated in the flexible tubular element (9) . . . ." (*Id.* at 12-13.)).

10.     In its October 13, 2010 Order denying Haemonetics' Motion For Status Conference (2009 D.I. 60), in describing the '983 patent's centrifugal device, the Court stated: "The device consists of two parts: a vessel in which the blood separation takes place ('the

Vessel') and tubing which carries blood in and out of the vessel ('the Tubes')."  Memorandum &

Order at 1-2 (2009 D.I. 65) (Johnston Decl. Ex. 14).


11.     The redesigned ALYX System RBC vessel is depicted below in Figures 1 and 2.

As identified in Figure 1, the redesigned ALYX System RBC vessel has an external outermost

diameter of 98.0 mm, an external outermost radius of 49.0 mm, and an external outermost height

of 64.5 mm, resulting in a height-to-radius ratio of 131.6%.[7]  *See* ALYX System RBC Vessel

Drawing (Johnston Decl. Ex. 15).



**FIGURE 1**                         **FIGURE 2**

12.     The redesigned ALYX System RBC Plasma vessel is depicted below in Figures 3

and 4.  As identified in Figure 3, the redesigned ALYX System RBC Plasma vessel has an

external outermost diameter of 98.0 mm, an external outermost radius of 49.0 mm, and an

overall external outermost height of 64.5 mm, resulting in a height-to-radius ratio of 131.6%.

---

[7]  At trial in the 2005 action, Haemonetics repeatedly argued that, in measuring the diameter and height of the separation cup, the "external outermost dimensions" of the cup must be used.  Fenwal, by contrast, argued that the radius and height limitations should be construed to refer to the interior dimensions of the separation chamber.  *See, e.g.*, Defs.' Memo. in Support of Mot. for JMOL or New Trial on the Issue of Infringement at 9-11 (Docket No. 288) (citing testimony of Dr. Robin Felder, Richard Brown, and Kelly Smith).  Under such a construction, the ALYX System vessels would not infringe.  In fact, Haemonetics's expert Dr. George A. Russell conceded at trial that, of four possible approaches to measuring the ALYX® cup, the height-to-radius ratio infringed only under the approach he used—measuring the external outermost dimensions.  (Trial Tr. Day 3, 119:15-20) (Johnston Decl. Ex. 5).  Accordingly, and for the purpose of the present motion only, Fenwal accepts the jury's apparent adoption of Haemonetics's argument that the dimensions are measured to the external outermost points.

*See* ALYX System RBC Plasma Vessel Drawing (Johnston Decl. Ex. 16).  Additionally, the

redesigned ALYX System RBC Plasma vessel includes a cutout in its annular walls, as shown in

Figures 3 and 4.





**FIGURE 3**                **FIGURE 4**

Dated:  January 26, 2011

Respectfully submitted,

/s/ Timothy D. Johnston
Daniel J. Gleason (BBO # 194900)
Timothy D. Johnston (BBO # 647894)
Heather B. Repicky (BBO # 663347)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
(617) 439-2000

-and-

John J. Normile (admitted *pro hac vice*)
Jones Day
222 East 41st Street
New York, NY 10017
(212) 326-3939

Gregory A. Castanias (admitted *pro hac vice*)
Jones Day
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939

*Attorneys for Fenwal, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 26, 2011, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Timothy D. Johnston

1985827.1